**STATE**

v.

**Thomas MENARD.**

**No. 2004–169–C.A.**

Supreme Court of Rhode Island.

Dec. 27, 2005.

Jane M. McSoley, Providence, for Plaintiff.

Todd S. Dion, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Chief Justice WILLIAMS, for the Court.

The state appeals a Superior Court grant of a motion to dismiss a criminal charge in favor of the defendant, Thomas Menard (defendant), for lack of probable cause to prosecute. The trial justice found that the defendant's prior conviction for arson in Arizona could not qualify as a predicate "crime of violence" to bring the defendant within the ambit of G.L.1956 § 11–47–5, which proscribes the possession

of firearms by any person previously convicted of certain enumerated crimes. For the reasons set forth below, we reverse the order of the Superior Court.

# I

## Facts and Travel

On January 19, 1981, defendant set ablaze the Palace Bar in Willcox, Arizona. He was indicted on February 20, 1981, and convicted in a Cochise County, Arizona, Superior Court of class 4 felony arson, in violation of § 13–1703 of the Arizona Revised Statutes. The defendant's judgment of guilt and sentence states that this offense was "not of a dangerous nature" as prescribed by Arizona law.[1]

Twenty-two years and some 2,600 miles later, defendant found himself in Rhode Island with his Charter Arms .44–caliber "Bulldog" revolver. Suspicions in connection with a separate police investigation prompted police to obtain a search warrant for his West Warwick residence. The warrant was executed on March 12, 2003, and the search uncovered said revolver. Evidence tied defendant to the firearm, and he was arrested on March 20, 2003. A criminal information formally charged defendant with possession of a firearm having been previously convicted of a crime of violence in violation of § 11–47–5; the

predicate crime of violence was defendant's 1981 Arizona arson conviction.

On February 5, 2004, a Rhode Island Superior Court trial justice entertained defendant's motion to dismiss the felon-in-possession charge, pursuant to Rule 9.1 of the Superior Court Rules of Criminal Procedure. The defendant argued that Rhode Island's statutory definition of "crime of violence," found in § 11–47–2(2), was irrelevant; according to him, Arizona's characterization of class 4 felony arson as a nondangerous felony should control the "crime of violence" determination. Thus, defendant maintained, Arizona law should govern whether defendant's prior arson conviction should qualify as a triggering crime under § 11–47–5. The trial justice found § 11–47–5 ambiguous as to whether prosecution may be had when the convicting state—here, Arizona—designates the crime as nonviolent, yet the sentencing state—here, Rhode Island—deems the subject conduct a crime of violence. Applying the rule of lenity, the trial justice interpreted the ambiguity in favor of defendant and granted his motion to dismiss that count. The state filed a timely notice of appeal.[2]

# II

## Analysis

On appeal the state reiterates arguments it made in opposition to defendant's

---

1. Arizona caselaw lends additional support to the proposition that class 4 felony arson is characterized in that jurisdiction as a "nondangerous" offense. *State v. Nichols*, 181 Ariz. 56, 887 P.2d 586, 587 (Ct.App.1994).

2. We note that the state filed a notice of appeal on February 24, 2004. However, an order reflecting the trial justice's dismissal of the subject charge was not entered until June 14, 2004. A valid appeal before this Court requires, in the first instance, filing a timely notice of appeal with the Superior Court clerk, *see* Article I, Rule 3(a) of the Supreme Court Rules of Appellate Procedure; *State v.*

*Hallenbeck*, 878 A.2d 992, 1020 (R.I.2005), preceded by a judgment or order from which to appeal, Article I, Rule 4(b) of the Supreme Court Rules of Appellate Procedure; *see also* Rule 3(c). Not only does Rule 4(b) treat as timely a notice of appeal filed before entry of a judgment or order, but this Court consistently has excused such a practice "in the interests of justice and to avoid undue hardship." *Hallenbeck*, 878 A.2d at 1020 (quoting *State v. Disla*, 874 A.2d 190, 192 n. 2 (R.I. 2005)). Therefore, we perceive no defect in the state's appeal.

motion to dismiss the charge. First, the state claims that the Legislature's decision to include second-degree arson as a "crime of violence" capable of triggering prosecution under § 11–47–5 evinces a broad, unambiguous intent to keep firearms from any individual previously convicted of conduct that would have been proscribed under Rhode Island's second-degree arson statute. *See* G.L.1956 § 11–4–3. The state follows by urging that, if we should agree with the first point, at the time defendant set fire to the Palace Bar in 1981, the implicated Arizona arson statute was sufficiently similar to its Rhode Island counterpart, thereby qualifying as a permissible predicate offense under § 11–47–5.

### A

### Standard of Review

 The issue before this Court is one of statutory interpretation,[3] and we review such questions *de novo*. *State v. Oliveira*, 882 A.2d 1097, 1110 (R.I.2005); *State v. Grayhurst*, 852 A.2d 491, 516 (R.I.2004).

### B

### Interpretation of § 11–47–5

In ruling on defendant's motion to dismiss, the trial justice found § 11–47–5 to be ambiguous. In essence, she found that the statute lacked adequate instruction as to whose law should govern the determination of whether a crime committed elsewhere is a permissible predicate crime of violence in this state. Put in the context of this appeal, the ambiguity, as perceived by the trial justice, lay in the enactment's alleged failure to articulate unequivocally which state's law should control whether

defendant's Arizona arson conviction is a permissible predicate offense under § 11–47–5: the Arizona Legislature's characterization of defendant's prior conviction as a class 4, nondangerous felony; or the Rhode Island General Assembly's designation of second-degree arson as a "crime of violence" for purposes of the Firearms Act.

 It is well established that when this Court interprets a statute, "our ultimate goal is to give effect to the General Assembly's intent. * * * The best evidence of such intent can be found in the plain language used in the statute." *Martone v. Johnston School Committee*, 824 A.2d 426, 431 (R.I.2003); *see also State v. Martini*, 860 A.2d 689, 694 (R.I.2004) (Williams, C.J. and Flaherty, J. dissenting) (citing *Grayhurst*, 852 A.2d at 516). " 'When the language of a statute is clear and unambiguous, we must enforce the statute as written by giving the words of the statute their plain and ordinary meaning.' " *Gem Plumbing & Heating Co. v. Rossi*, 867 A.2d 796, 811 (R.I.2005); *see also State v. Santos*, 870 A.2d 1029, 1032 (R.I.2005). "[W]hen we examine an unambiguous statute, 'there is no room for statutory construction and we must apply the statute as written.' " *Id.* (quoting *State v. DiCicco*, 707 A.2d 251, 253 (R.I.1998)). In addition, "it is axiomatic that 'this Court will not broaden statutory provisions by judicial interpretation unless such interpretation is necessary and appropriate in carrying out the clear intent or defining the terms of the statute.' " *Id.* (quoting *Simeone v. Charron*, 762 A.2d 442, 448–49 (R.I.2000)). Regardless, under no circumstance will this Court "construe a statute to reach an absurd result." *Id.* at 1032 n.

---

**3.** We are mindful that this case is before us on the state's appeal from the trial justice's dismissal of a charge in defendant's criminal information for lack of probable cause. However, the trial justice's decision was predicated upon a finding of statutory ambiguity. As stated above, we therefore undertake a *de novo* review.

5 (quoting *Kaya v. Partington*, 681 A.2d 256, 261 (R.I.1996)).

Our analysis in the present case begins and ends with the statutory language as written. Section 11–47–5(a) reads, in pertinent part:

> "No person who has been convicted *in this state or elsewhere* of a crime of violence or who is a fugitive from justice shall purchase, own, carry, transport, or have in his or her possession any firearm." (Emphasis added.)

Section 11–47–2(2), the formal definition section for the Rhode Island Firearms Act, supplies the meaning of "crime of violence" as it appears in § 11–47–5(a), reciting a multitude of specific offenses, including "first and second degree arson." [4]

■ Upon carefully considering the plain statutory language, it is clear to us that the General Assembly has indicated that Rhode Island law must govern which convictions, either domestic or adjudged "elsewhere," qualify as predicate offenses under § 11–47–5. A fair reading reveals that only convictions for "crimes of violence," as defined by § 11–47–2(2), suffice as predicate offenses under § 11–47–5. The clause "in this state or elsewhere" expands the universe of permissible predicate offenses to include out-of-state as well as domestic convictions. The only conclusion to draw from this language is that the General Assembly intended *all* convictions

"elsewhere" to align with at least one enumerated "crime of violence" before being considered a permissible predicate under § 11–47–5.

The defendant's insistence that § 11–47–5 is just as susceptible to the interpretation that out-of-state law should dictate which out-of-state convictions qualify as predicate offenses necessarily implies the rather unlikely proposition that our General Assembly intended to subordinate Rhode Island penal law and its accompanying policies to the various criminal laws and court systems of the several jurisdictions.

First, it would be absurd to intimate that our Legislature intended to accord another state's lawmakers the ability to determine the propriety of firearm prosecutions in Rhode Island. The defendant's construction of § 11–47–5 would essentially allow out-of-state law to steer prosecutorial discretion in Rhode Island, since that state's law would dictate whether a multiple offender could be prosecuted under § 11–47–5. These are precisely the offenders our Legislature clearly intended to target in § 11–47–2(2).

In addition, it is simply untenable that the General Assembly could have intended Rhode Island's penal law to be at the mercy of another state's criminal policy. Certainly the unique public policy of Rhode Island has resulted in an equally

4. The full text of the Rhode Island Firearms Act's definition of "crime of violence" is as follows:

> " 'Crime of violence' means and includes any of the following crimes or an attempt to commit any of them: murder, manslaughter, rape, first or second degree sexual assault, first or second degree child molestation, kidnapping, *first and second degree arson*, mayhem, robbery, burglary, breaking and entering, any felony violation involving the illegal manufacture, sale, or delivery of a controlled substance, or pos-

> session with intent to manufacture, sell, or deliver a controlled substance classified in schedule I or schedule II of § 21–28–2.08, any violation of § 21–28–4.01.1 or 21–28–4.01.2 or conspiracy to commit any violation of these statutes, assault with a dangerous weapon, assault or battery involving grave bodily injury, and/or assault with intent to commit any offense punishable as a felony; upon any conviction of an offense punishable as a felony offense under § 12–29–5." G.L.1956 § 11–47–2(2) (emphasis added).

distinct body of criminal law.[5] The Maryland Court of Special Appeals has aptly conveyed this sentiment by noting that "[c]utting cacti in California, uprooting the state flower (rhododendron) in West Virginia, or desecrating a Confederate cemetery in Mississippi may be felonies punishable by imprisonment in those states. We, however, would not consider such acts as proper bases for mandatory sentencing, no matter how they are viewed by the several jurisdictions." *Mitchell v. State*, 56 Md.App. 162, 467 A.2d 522, 533 (Ct.Spec.App.1983). Likewise, our Legislature enacted § 11–47–5 with the knowledge that sister jurisdictions do not uniformly proscribe the behaviors deemed "crimes of violence" in

§ 11–47–2(2). Therefore the General Assembly intended Rhode Island law to govern whether an out-of-state conviction is a permissible predicate crime under § 11–47–5.[6] *See Ashley v. State*, 757 N.E.2d 1037, 1040 (Ind.Ct.App.2001) (concluding that because "many jurisdictions * * * do not classify their crimes in the same manner as our legislature has chosen," Indiana law should govern whether a foreign conviction constitutes a predicate felony under Indiana law). Put differently, another jurisdiction's characterization or classification of a criminal offense is wholly irrelevant for the purposes of determining whether a conviction for that crime constitutes a permissible predicate offense under

**5.** The defendant suggests that the Full Faith and Credit Clause of the United States Constitution, Article IV, section 1, may compel Rhode Island to defer to Arizona's characterization of class 4 felony arson as a nondangerous crime. Although not directly on point, it consistently has been recognized that "the full faith and credit clause does not require one state to enforce the penal laws of another." *Williams v. North Carolina*, 317 U.S. 287, 294 n. 6, 63 S.Ct. 207, 87 L.Ed. 279 (1942); *see also Nelson v. George*, 399 U.S. 224, 229, 90 S.Ct. 1963, 26 L.Ed.2d 578 (1970) ("[T]he Full Faith and Credit Clause does not require that sister States enforce a foreign penal judgment."); *People v. Laino*, 32 Cal.4th 878, 11 Cal.Rptr.3d 723, 87 P.3d 27, 32–34 (2004); *State v. Langlands*, 276 Ga. 721, 583 S.E.2d 18, 20–21 (2003); *State v. Edmondson*, 112 N.M. 654, 818 P.2d 855, 860 (Ct.App.1991) ("It is not at all clear that the Full Faith and Credit Clause applies to criminal matters."). Underlying this proposition is the more pertinent rationale that "full faith and credit does not automatically compel a forum state to subordinate its own statutory policy to a conflicting public act of another state * * *." *Hughes v. Fetter*, 341 U.S. 609, 611, 71 S.Ct. 980, 95 L.Ed. 1212 (1951). The New Mexico Court of Appeals has elaborated on this concept as follows:

"A state cannot express its public policy more strongly than through its penal code. When a state defines conduct as criminal

and sets the punishment for the offender, it is conveying in the clearest possible terms its view of public policy. Full faith and credit ordinarily should not require a state to abandon such fundamental policy in favor of the public policy of another jurisdiction." *Edmondson*, 818 P.2d at 860–61. *See also* Restatement (Second) *Conflict of Laws* § 103 (1971) ("A judgment rendered in one State of the United States need not be recognized or enforced in a sister State if such recognition or enforcement is not required by the national policy of full faith and credit because it would involve an improper interference with important interests of the sister State."). In light of the foregoing, we are convinced that the Full Faith and Credit Clause does not require Rhode Island to subordinate its criminal policy to that of Arizona.

**6.** Our conclusion is only buttressed by the fact that the precise phrase "crime of violence" is defined differently within our General Laws. *Compare* § 11–47–2(2) (including first- and second-degree arson as "crimes of violence"), *with* G.L.1956 § 12–1.3–1(1) (enumerating only first-degree arson as a "crime of violence"). This is telling. It reveals not only that "crime of violence" has no generic meaning in this state, but that the various definitions of "crime of violence" throughout the General Laws are motivated more by a particularized public policy than a faithful allegiance to some general notion of what constitutes a "violent" offense.

§ 11–47–5. *See Mitchell,* 467 A.2d at 533 ("Whether a criminal act constitutes a 'crime of violence' must be measured against the [domestic] statute, and it matters not whether the particular crime may be a violent act in the foreign state.").

We hold that it was the General Assembly's clear and unambiguous intent, manifested just as lucidly in § 11–47–5 and § 11–47–2(2), that Rhode Island law govern whether a foreign conviction can qualify as a predicate "crime of violence" under § 11–47–5.

## C

### A Crime of Violence Elsewhere Under § 11–47–5

■ We arrive now at the ultimate issue in this appeal: whether defendant's class 4 felony arson conviction in Arizona qualifies as a permissible predicate under § 11–47–5, as determined by Rhode Island law. Resolution of this question requires this Court to outline the exercise to be undertaken when determining the qualification of an out-of-state predicate offense under § 11–47–5.

Other jurisdictions seem to be in agreement that the task is, in effect, a simple comparison of penal laws.[7] The goal, for the purposes of § 11–47–5, is to ensure that the elements of a "crime of violence" enumerated in § 11–47–2(2) match with sufficient similarity the elements of a prior, out-of-state conviction to be used as a predicate crime under § 11–47–5. *See Commonwealth v. Durakowski,* 58 Mass. App.Ct. 92, 788 N.E.2d 568, 572–73, *rev. denied,* 439 Mass. 1108, 791 N.E.2d 346 (2003) ("[w]hile we agree with the defendant that an attempted sexual assault under Nevada law is not the legal equivalent of the (Massachusetts) crime of assault with intent to commit rape * * * we nevertheless conclude that * * * [the judge] did not err in finding the defendant guilty * * * based on the Nevada offense."); *People v. Muniz,* 74 N.Y.2d 464, 548 N.Y.S.2d 633, 547 N.E.2d 1160, 1162–64 (1989) ("this inquiry is limited to a comparison of the crimes' elements as they are respectively defined in the foreign and New York penal statutes."); *State v. Ford,* 137 Wash.2d 472, 973 P.2d 452, 455 (1999) ("the sentencing court must compare the elements of the out-of-state offense with the elements of potentially comparable Washington crimes."). This requires that, at the time of a defendant's predicate conduct, a defendant could have been convicted in Rhode Island for an offense enumerated in § 11–47–2(2).[8]

---

**7.** The wealth of caselaw instructive on this point is found in cases in which the several states have been called upon to determine the propriety of using an out-of-state conviction under a habitual offender or sentencing enhancement rubric. We are keenly aware of the fact that § 11–47–5 is a substantive felon-in-possession law, and not an enhancement scheme. However, apart from a more stringent burden of proof, we foresee no difficulty in looking to the reasoning in enhancement cases for guidance.

**8.** The appeal presented requires us to go no further than the text of the Arizona and Rhode Island statutes for resolution. Therefore, we do not decide today whether, if un-

clear from the statutory text, the factual circumstances underlying a possible predicate offense may be explored in determining statutory similarities. *Compare People v. Muniz,* 74 N.Y.2d 464, 548 N.Y.S.2d 633, 547 N.E.2d 1160, 1162 (1989) (holding that the inquiry of whether an out-of-state conviction constitutes a predicate offense in New York is ordinarily limited to a comparison of penal statutes), *and People v. Nguyen,* 899 P.2d 352, 358 (Colo.Ct.App.1995) (adopting the "New York Rule"), *with State v. Hulbert,* 209 W.Va. 217, 544 S.E.2d 919, 924 (2001) (holding that when another state's penal statute contains additional elements than the parallel West Virginia crime, a conviction under the out-of-state statute can properly enhance a West

A comparison of the two statutes at issue in this case supports the use of the defendant's Arizona arson conviction as a predicate offense under § 11–47–5. Section 11–47–2(2) lists second-degree arson as a "crime of violence." In 1981, Rhode Island's second-degree arson statute read, in pertinent part:

> "[a]ny person who knowingly causes, aids, procures or counsels by means of fire or explosion, the damage or destruction of any unoccupied building, structure or facility the property of himself or another, shall, upon conviction, be sentenced to imprisonment * * *." G.L. 1956 § 11–4–3, as amended by P.L. 1980, ch. 247, § 1.

The Arizona arson statute under which the defendant was convicted in 1981 was as follows:

> "A person commits arson of an unoccupied structure or property by intentionally and unlawfully damaging an unoccupied structure or property by knowingly causing a fire or explosion." Ariz.Rev.Stat. § 13–1703(A), as amended by P.L. 1980, ch. 229, § 18.

This section goes on to label this crime a "class 4 felony," so long as the subject property had a value in excess of $1,000. *Id.* at § 13–1703(B). Thus, to be convicted of class 4 felony arson in Arizona, the prosecution must have proven, beyond a reasonable doubt, that (1) the defendant intentionally damaged unoccupied property, (2) the defendant unlawfully damaged unoccupied property, and (3) the defendant did so by knowingly causing a fire or ex-

plosion. *See* Ariz.Rev.Stat. § 13–1703(A). A conviction for second-degree arson in Rhode Island requires proof beyond a reasonable doubt that (1) the defendant knowingly damaged unoccupied property that (2) belonged to the defendant or someone else, and (3) this property was damaged by fire or explosion. Section 11–4–3. That the Arizona law requires proof of the added element of unlawful damage is immaterial to this matter: Without sufficient proof that the defendant intentionally damaged an unoccupied structure by fire or explosion, there is no criminal liability under the Arizona statute. This element— intentionally damaging a structure by fire or explosion—exceeds the *mens rea* requirement for second-degree arson in Rhode Island. To simplify, the defendant's conviction in Arizona required proof of more than what was required under Rhode Island's second-degree arson statute; any additional element in the Arizona law is merely superfluous.[9]

### Conclusion

For the reasons stated, the order of the Superior Court is hereby reversed, and the papers in the case are remanded to the Superior Court for proceedings not inconsistent with this opinion.

---

Virginia sentence if "the factual predicate" for the out-of-state conviction would have constituted the parallel offense in West Virginia).

9. On appeal, defendant levels two arguments to support his position that the Arizona and Rhode Island laws are, in fact, not substantially similar. At oral argument, however, defendant conceded that these arguments were not raised below. Indeed, a review of the record confirms his concession. "[T]his Court will not consider an issue raised for the first time on appeal that was not properly presented before the trial court." *State v. LaRoche,* 883 A.2d 1151, 1157 (R.I.2005) (quoting *State v. Silvia,* 798 A.2d 419, 427 (R.I.2002)).