507 A.2d 1134

**Ernest JOHNSON, Jr.**

v.

**STATE of Maryland.**

**No. 865, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

May 8, 1986.

Victoria S. Keating, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Valerie V. Cloutier, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Kurt L. Schmoke, State's Atty. for Baltimore

City and Jeffrey Levenson, Asst. State's Atty. for Baltimore City on the brief), Baltimore, for appellee.

Argued before GILBERT, C.J., and KARWACKI, and WENNER, JJ.

WENNER, Judge.

Ernest Johnson, Jr., appellant, was convicted by a jury in the Circuit Court for Baltimore City (Steinberg, J.) of unlawfully carrying a handgun and possession of a handgun by one previously convicted of a crime of violence. Consecutive sentences of three years' imprisonment were imposed. Appellant raises the following questions on appeal:

1. Did the court below err in failing to determine whether appellant was competent to stand trial, and, thereafter, in failing to determine whether appellant was competent to waive his right to counsel?

2. Did the court below err in refusing appellant's request to retract his waiver of counsel?

3. Did the court below err in proceeding with the trial in appellant's absence, where appellant was representing himself and no counsel was appointed to represent appellant's interests during the period of time appellant was absent?

4. Did the court below err in failing to conduct a hearing in response to appellant's motion to suppress, relying instead upon the ruling of a judge in a previous trial that had ended in a mistrial because of the court's determination that appellant was incompetent to stand trial?

5. Did the court below err in giving an improper "*Allen* charge" to the jury?

6. Did the court below err in imposing double punishment for one offense?

Our answer to each of the questions presented is no, for reasons we shall explain. Since the issues raised by this

appeal are fairly numerous and complex, we will first set out the facts in some detail.

## BACKGROUND

Appellant was arrested on January 2, 1983, and a privately retained attorney entered his appearance on appellant's behalf. Appellant elected a jury trial and waived his right to be tried within 180 days pursuant to Maryland Rule 746.[1] The trial scheduled for January 5, 1984, was postponed so that appellant could be examined by the court's medical staff to determine his competency to stand trial. He was examined on February 3, 1984, and found to be competent. The trial was postponed again on July 20, 1984, at appellant's request, to give him more time to prepare for trial.

The trial began before Judge Wahl on October 2, 1984. Appellant was represented by privately retained counsel. When the prosecutor called the second charge, unlawful possession of a handgun by one previously convicted of a crime of violence, appellant objected. The court told him not to interrupt the proceedings and speak through his attorney.

THE COURT: ... While you are sitting in this case you won't say anything. You are not going to express yourself out loud, you are not going to have any outbursts. You have nothing to say to the court, that is not to say you can't whisper to your attorney, but I don't want any outburst. If you do insist on speaking out loud or making outbursts you will find yourself held in contempt of court and you will be back in jail. Do you understand that?

DEFENDANT JOHNSON: Yes.

THE COURT: This is not your opportunity to talk, it's your attorney who will do the talking, you may whisper to him as I told you. Do you understand that?

---

1. This rule in its present form is Rule 4-271.

DEFENDANT JOHNSON: Yes, I understand what you said. I am not familiar with that. And when I am not familiar with it in any court I speak up.

THE COURT: Do you want to not have an attorney and proceed in proper person?

DEFENDANT JOHNSON: Preferably a postponement.

THE COURT: I ask you to let your attorney speak for you.

MR. LEVINSON [Assistant State's Attorney]: I want the record to show that the Defendant has been in court on numerous occasions and the Defendant has been advised of his right to counsel and he had counsel and has fired [sic] and in proceeding he has either a counsel or been advised of his right to counsel.

THE COURT: Sir, I am asking you for the last time are you going to let your attorney speak for you and remain quiet yourself?

DEFENDANT JOHNSON: I will remain quiet, Your Honor.

Following this exchange, the court heard a number of pre-trial motions, including a motion to suppress the handgun found on appellant's person at the time of his arrest; which was denied. A jury was empaneled and sworn, and the State began to present its case. Appellant repeatedly interrupted the proceedings and, after several unsuccessful attempts to quieten him, he was removed from the courtroom. He was removed from the courtroom the following day, after several more interruptions, and sent to the medical staff of the circuit court for an evaluation. The medical staff made a preliminary finding that appellant was incompetent to stand trial. Based on that report and his attorney's proffer that he was incompetent, Judge Wahl granted appellant's motion for a mistrial and ordered him sent to Clifton T. Perkins State Hospital for evaluation. Appellant was also allowed to enter a plea of not guilty by reason of insanity.

The results of the examination at Perkins are not in the record. The record does, however, reflect that on December 17, 1984, the trial was postponed again at appellant's request. On that date the appearance of his privately retained counsel was stricken and the Public Defender entered his appearance on behalf of appellant. The trial was postponed in January of 1985 to give the defense more time to prepare, and was postponed a sixth time in February of 1985.

The trial finally began on March 19, 1985, before Judge Marvin Steinberg. After the judge had ruled on a number of pre-trial motions, appellant began to interrupt. The judge told him to speak through his attorney. He replied, "I will talk through him but I'm saying, Your Honor, I don't trust no lawyers, number one." He was asked if he wanted to proceed with counsel. He answered, "I'm saying, if he is going to cooperate with me and we do it together, yes."

The judge granted a brief recess so that appellant could confer with his attorney. After the recess, Mr. Turner, his attorney, told the court: "Your Honor, all I can report to you, as an officer of the court, is that Mr. Johnson says 'you can go ahead and do what you want, but I am going to interrupt if it's not going right.' "

The proceedings continued. Defense counsel moved for a severance of the charges, which was denied. Appellant apparently became dissatisfied with his attorney's efforts on his behalf:

THE DEFENDANT: Judge, Your Honor, I request a postponement, please. I'm not staying here. All that lying. I'm not going for it ... I'm not going for that ... I object to all of it, Your Honor.

MR. TURNER: May we approach the Bench?

THE DEFENDANT: I will handle my case myself.

THE CLERK: [sic] I would like to see counsel at the bench.

THE DEFENDANT: I don't want him to represent me. He's not competent. I object.

Following a lengthy waiver inquiry, the judge found that appellant had waived his right to counsel. Mr. Turner's appearance was stricken, but he was told to remain in the courtroom to advise appellant, if appellant so desired. All remaining motions were disposed of with appellant representing himself. Jury selection began. At that point appellant requested, and was refused, permission to withdraw his waiver of counsel. A jury was empaneled and sworn, and opening statements were made. After the jury was dismissed for the evening, appellant renewed his objection to being tried for the charge of unlawful possession of a handgun by one previously convicted of a crime of violence. That charge had been brought by way of a criminal information. Appellant believed that he could not be charged by way of a criminal information unless he consented to being charged in that manner. He also argued that the evidence supporting that charge, that he had previously been convicted of crime of violence, would be prejudicial to the other charge and should not be introduced. He stated repeatedly that he completely disagreed with the court's views on these issues. He was asked if he had any requests for the next day, and he responded: "I would rather not come in here, if you are going to do that. I keep telling you that. I'm not sitting here no way with a criminal information. I have a right. This is my constitutionality, and you always rule in favor for [the prosecutor]." The judge told appellant to sit down or he would be removed from the courtroom. Appellant declared:

You can take me out where I came from. I told you I don't like this lying and double-dealing. This has nothing to do with the handgun, nothing, and I can't get an impartial trial if you keep bringing that shit up. Guilty or not. He don't know nothing about that. No, I won't go along with that. No. Hell no. I'm tired. No, I don't want to. I'm not submitting to anything.

After a discussion about the next day's witnesses, appellant once more objected to the charge of illegal possession of a handgun by one previously convicted of a crime of violence,

saying, "[t]his has to be reflected on the record, because I told you I am not consenting to that. The only charge I am consenting to is the illegal possession of a handgun." Court was adjourned, and Mr. Turner was told to return the next day to advise appellant.

The next morning appellant declared that he was disqualifying himself as his attorney, and his mother was going to hire an attorney for him. The court would not permit him to withdraw his waiver of counsel and hire another attorney. Appellant then stated that he refused to participate in the trial at all, and insisted that he be allowed to leave the courtroom. The prosecutor suggested that appellant be forced to stay in the courtroom. The transcript reads:

THE COURT: Mr. Levenson, I think that the Court cannot force Mr. Johnson to have a lawyer, and I think the Court cannot force Mr. Johnson to leave or stay.

Mr. Johnson appears to the Court to be acting in a perfectly rational way. He appears to know full-well the nature of these proceedings. He has discussed motions with this Court. He has given the Court reasons. He has expressed a desire that he wants to leave the courtroom. He does not have to be present during the trial, I think, if he wants to leave.

Is that your request, that you leave the trial, Mr. Johnson?

THE DEFENDANT: Yes, Your Honor.

Before appellant left, the court reiterated that Mr. Turner would remain in the courtroom to advise the court. Appellant was told he could return at any time. He refused to do so.

After the State concluded its case, appellant was brought back into the courtroom. Mr. Turner advised him of the status of the case and asked if appellant wanted to do anything. He responded, "I object to this whole procedure. I don't want nothing to do with it." He told the court that he objected on the grounds (1) that he was not competent enough to represent himself; and (2) that the State did not

allow him enough time to prepare his case; and (3) that he was trying to obtain counsel. He then said that he was under the influence of drugs. The court stated: "Let the record show that it is the observation of the Court that Mr. Johnson appears to be normal in all respects and understands full-well what is happening and is able to communicate his thoughts and concerns quite coherently to the Court." Appellant was then, at his request, excused from the courtroom.

Mr. Turner suggested to the court that a motion for judgment of acquittal be made on behalf of appellant. The court made such a motion and denied it. The State made a closing argument. Rather than summarize the State's case, suffice it to say that appellant does not question the sufficiency of the evidence. After deliberating for half an hour, the jury found appellant guilty on both counts.

## I.

*Appellant's competence to stand trial and his competence to waive his right to counsel*

■■■ We note at the outset that the test for determining competency to stand trial, as set out in Md.Health—General Code Ann. § 12–101(d) (1985 Cum.Supp.), is whether the accused is able to understand the nature or object of the proceeding or is able to assist in his defense. *See Raithel v. State,* 280 Md. 291, 372 A.2d 1069 (1977). One accused of criminal conduct is presumed to be competent to stand trial. *Hill v. State,* 35 Md.App. 98, 105, 369 A.2d 98 (1977). However, § 12–103(a) of the Health—General Article mandates that: "[i]f, before or during a trial, the defendant in a criminal case appears to the court to be incompetent to stand trial or the defendant alleges incompetence to stand trial, the court shall determine, on evidence presented on the record, whether the defendant is incompetent to stand trial." Thus, the trial court's duty to determine the competency of an accused to stand trial is triggered in one of three ways: (1) upon an allegation by the accused himself

that he is incompetent; (2) upon an allegation by defense counsel that the accused is incompetent; or (3) upon the court's *sua sponte* decision that the accused appears to be incompetent. *Smith v. State*, 62 Md.App. 670, 677, 491 A.2d 587, *cert. denied*, 304 Md. 96, 497 A.2d 819 (1985).

■ Although a judicial determination of the accused's competency to stand trial is mandatory in any of those three situations, where the accused has been found competent and thereafter alleges that he is incompetent, the court is not required to hold an additional hearing to make findings of fact and conclusions of law as to competency. *Stewart v. State*, 65 Md.App. 372, 377, 500 A.2d 676 (1985). Appellant argues that where, as here, an accused has been adjudicated incompetent to stand trial, a presumption arises that he is incompetent for purposes of all subsequent proceedings. Thus, he asserts, an additional evidentiary hearing on the record was mandatory before further proceedings could be held. We need not decide whether appellant's argument is correct, however, because, contrary to his recitation of the facts, he had never been judicially determined to be incompetent to stand trial.

■■ Appellant's competence to stand trial was not raised before or during the trial. When questioned by the court, appellant stated that he was not mentally ill. He argues now that it would be somewhat circular to hold that one who is incompetent to stand trial must be competent enough to understand that he is incompetent to stand trial. This may be so. Nonetheless, we note that while appellant was still represented by counsel, his attorney told the court that he thought appellant was competent to stand trial. In addition, the trial judge conducted a lengthy and detailed examination of appellant. The judge's questions concerned not only appellant's understanding of the charges and of his rights, but also inquired into appellant's age, family history, educational background, work history, medical history and psychological history. Appellant answered all of the judge's questions in a rational, coherent manner. He also

displayed a marked degree of sophistication about the law. While his legal skills were not those of a lawyer, he did appear to have gained some practical understanding of the law, perhaps through his prior confrontations with it.[2] In sum, there is every indication in the record that appellant met the standard of competency to stand trial. To be sure, the results of his evaluation at the Clifton T. Perkins Hospital is not contained in the record. We infer, however, from the fact that he had been returned for trial, that he had been found competent by the staff of that institution. Moreover, that issue was not raised and decided by the lower court and has not been preserved for our review. Rule 1085. We hold, therefore, that the trial judge did not err in failing to conduct *sua sponte* an evidentiary hearing to determine appellant's competency to stand trial.

■ Nevertheless, appellant contends that a finding of competency to stand trial does not automatically lead to a conclusion that an accused is also competent to waive his right to counsel. *See Mann v. State's Attorney for Montgomery County*, 298 Md. 160, 169, 468 A.2d 124 (1983). Thus, he argues that the trial court erred in failing to determine his competency to waive his right to counsel. We do not agree that the trial judge failed to make this determination, nor do we find that his determination was incorrect.

---

**2.** The record is replete with evidence that appellant understood far more than simply the nature of these proceedings, as is best illustrated by the following colloquy:

THE COURT: Mr. Johnson, do you understand that the maximum sentence that could be imposed on you, and I would like the State's Attorney to correct me if I am wrong, would be a total of six years in jail and $3,500 in fines?

MR. LEVENSON: That is correct.

THE DEFENDANT: That is incorrect.

THE COURT: Do you understand that?

THE DEFENDANT: This is incorrect, though.

THE COURT: Mr. Johnson, I am telling you that is the maximum.

THE DEFENDANT: I can't receive six years. I can't receive six years. This is my first handgun violation.

THE COURT: You are not on trial now, Mr. Johnson. I just want to make sure you understand the offenses.

THE DEFENDANT: I understand it very well.

In *Faretta v. California*, 422 U.S. 806, 807, 95 S.Ct. 2525, 2527, 45 L.Ed.2d 562 (1975), the Supreme Court held that an accused in a criminal prosecution has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so. The Court recognized that the *pro se* defendant relinquishes many of the traditional benefits associated with the right to counsel, and stated that "[f]or this reason, in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits." 422 U.S. at 835, 95 S.Ct. at 2541 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464–65, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 146 A.L.R. 357 (1938)).

■ Rule 4–215 implements the constitutional mandates for waiver of counsel. *Snead v. State*, 286 Md. 122, 130, 406 A.2d 98 (1979). That rule provides that before a defendant may discharge an attorney whose appearance has been entered and proceed *pro se*, the trial judge must first determine that the waiver is knowing and voluntary. As part of this inquiry the court must inform the defendant of the right to counsel and of the importance of the assistance of counsel, and advise him of the nature of the charges in the charging document and the possible penalties.

In this case the record reveals a remarkably patient and thorough compliance with this rule. The waiver inquiry began as follows:

MR. TURNER [defense counsel]: Your Honor, I don't know what my status was in the case.

THE COURT: Your status right now is that you represent Mr. Johnson.

THE DEFENDANT: I don't want him to represent me, Your Honor.

THE COURT: I understand that.

THE DEFENDANT: And I have valid reasons.

THE COURT: Mr. Johnson, please be seated. We have disposed of, I think, three preliminary motions, and about at that time, I think Mr. Johnson indicated to the Court that he wanted to discharge his counsel.

Is that correct, gentlemen?

MR. TURNER: That is my recollection, Your Honor.

THE COURT: All right.

Mr. Johnson, is it your desire to discharge your counsel now?

THE DEFENDANT: Yes, sir, Your Honor.

THE COURT: And you want to proceed on your own?

THE DEFENDANT: Yes, Sir.

THE COURT: Without a lawyer?

THE DEFENDANT: Yes, sir.

Appellant was then placed under oath, after carefully noting: "For the record, your Honor, I don't swear, I affirm." He was questioned extensively about his background. The court informed him of the charges and the possible penalties, and appellant stated that he understood.

The transcript continues as follows:

THE COURT: All right.

Do you know what a lawyer does for you?

THE DEFENDANT: Yes, sir.

When you obtain counsel, he is supposed to assist you. It's his duty.

THE COURT: You have had lawyers before; have you not?

THE DEFENDANT: Yes, sir, some of the best in Baltimore, Maryland, some of the best.

THE COURT: Do you understand that a lawyer is specially trained and educated to assist you in this case?

THE DEFENDANT: Yes, sir, I do.

THE COURT: Do you understand that an attorney would probably be of extreme importance in determining whether or not you might have a defense to any of these charges or whether or not there are any factors which would tend to mitigate or lessen the sentence even if you were guilty? Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that if you had an attorney, he could help you in preparing for trial; he could represent you here and continue to do so, as Mr. Turner has been doing?

THE DEFENDANT: Judge, Your Honor, insofar as Mr. Turner, like I explained to you earlier, I was trying to clarify a matter of importance.

THE COURT: We are not talking about Mr. Turner. I just want to make sure you understand what you are giving up when you give up a lawyer.

THE DEFENDANT: I understand. I'm saying if he is not going to help me, I don't need him. I don't need him to help me to go to jail. I could do that on my own.

THE COURT: Do you understand if you had a lawyer, he would help you to cross-examine the State's witnesses? Do you understand that?

THE DEFENDANT: Yes, sir, I do.

THE COURT: Do you understand that if you had a lawyer, he would help you in determining what witnesses should be called in your behalf? Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that an attorney could assist you in your decision as to whether or not you should take the stand in your own behalf and testify in your own behalf? Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that if you had a lawyer, he could make and would probably make legal argument in your behalf? Do you understand that?

THE DEFENDANT: Yes, sir, I do.

THE COURT: And that also the attorney would present the facts as favorably as possible to your side of the case before the Court or before the jury. A lawyer would help you do that. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that even if you change your plea to a guilty plea, that a lawyer would be helpful in assisting you in developing information that would affect the sentence or other disposition of your case? Do you understand that?

THE DEFENDANT: Yes, sir, I do.

THE COURT: Now, you know that Mr. Turner is with the Public Defender's Office, and even if you could not afford a lawyer, you could continue having the Public Defender's Office represent you.

Do you understand that?

THE DEFENDANT: Yes, sir, I do.

THE COURT: Do you understand that when we proceed to the trial of these charges, that you have certain rights? One of them is to call witnesses in your own behalf. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: You have a right to confront and cross-examine the State's witnesses. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: Do you understand that if you wanted a witness to testify for you and he refused, you could ask the Court to file summonses and have that witness—compel that witness to testify or at least compel the witness to come to court. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that you have a right to have these charges proved beyond a reasonable doubt before this Court or jury could find you guilty? Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that a lawyer would help you do all of these things, to protect your rights?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that by giving up a lawyer, you will have to represent yourself at this trial?

THE DEFENDANT: Yes, sir, I do.

THE COURT: Do you understand that this decision, to proceed in your own behalf, might hurt you at trial and might cause you some harm, because you don't have the special training and education and experience which a lawyer has? Do you understand that?

THE DEFENDANT: Judge, Your Honor—

THE COURT: Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that if you decide to represent yourself, even though you are not a lawyer, you will still have to comply with all of the relevant rules regarding the trial of a criminal case?

THE DEFENDANT: I have been.

THE COURT: But you understand you'll have to continue doing this?

THE DEFENDANT: Yes, sir.
The State don't.

THE COURT: Do you understand that in the event you are found guilty and you want to file an appeal, that you will not be able to complain that you made a mistake in representing yourself?

THE DEFENDANT: Yes, sir, I understand.

THE COURT: Now, understanding all of these things, do you still want to give up your right to have a lawyer and proceed on your own behalf?

THE DEFENDANT: Like I explained earlier—

THE COURT: Is that what you want to do, Mr. Johnson? And then you can explain.

THE DEFENDANT: Yes, sir, I mean, if he is not going to do it for me. I mean, I asked him to present the evidence that I asked him to.

THE COURT: Please answer my question. If you are going to be representing yourself, the first thing you have to learn is to answer the questions.

THE DEFENDANT: Yes, sir.

THE COURT: Do you still want to go ahead and represent yourself?

THE DEFENDANT: Yes, sir.

THE COURT: Gentlemen, Counsel, is there anything else that you think the defendant ought to be asked?

MR. TURNER: Your Honor, I have followed the litany as your Honor presented it, and I feel you have thoroughly and completely explained to Mr. Johnson his rights.

MR. LEVENSON: I would concur with that, Your Honor.

THE COURT: All right. Then the Court finds this defendant has knowingly and voluntarily waived his right to counsel, and we will proceed with the defendant representing himself.

I do ask you, Mr. Turner, if you would, to simply remain as a observer at the trial table.

MR. TURNER: At the trial table, Your Honor?

THE COURT: No, I'm sorry. Just in the courtroom.

MR. TURNER: And I would ask that our appearance be stricken from this case, Your Honor.

THE COURT: Mr. Johnson, Mr. Turner has asked that his appearance be struck. Do you have any objection to that?

THE DEFENDANT: No, I don't.

After this exchange, the court granted permission for defense counsel's appearance to be stricken, but required him to remain in the courtroom near appellant, to advise him if necessary. Counsel remained for that purpose. We, quite frankly, fail to see how this inquiry, which appellant characterizes as "simply routine", could have been more thorough; nor do we feel that the judge was wrong when he found that appellant had knowingly and voluntarily waived his right to counsel.

## II.

*The trial judge's refusal to re-appoint defense counsel*

After the appearance of defense counsel was stricken, the charges were again read to the appellant. He elected a jury trial on the charge of unlawfully carrying a handgun and

moved for a severance on the charge of unlawful possession of a handgun by one previously convicted of a crime of violence. He argued that the evidence pertaining to the latter charge would be prejudicial to the former, and introduced an exhibit in support of the motion. He also renewed his motion to suppress the handgun, moved for dismissal of the charges on speedy trial grounds, and objected to being charged by way of criminal information. After the motions were denied, he renewed his election of a jury trial and wrote out voir dire questions for the jury.

The judge called in a jury panel and introduced the parties. He told the prospective jurors that appellant would represent himself. The judge then asked appellant and the State to select a jury, whereupon appellant stated, "He can take it at this point." He explained:

> But what I'm saying, like I said, I don't know the rules in its entirety insofar as dealing with a jury and the questions and so forth and so on, and being as though I am the defendant, it wouldn't be fair to the Court and myself and to the State to, you know, cross-examine. I can pass the information on to Mr. Turner with reference to what occurred that night. Up until, you know, this point, I would rather for him to go ahead and take it over, but on the motions, I would rather present it myself, like I said. I am still not in agreement, though.

Mr. Turner was called to the bench. He stated that, if ordered to do so, he would represent appellant. He was, however, very concerned about post-conviction problems because his appearance had been stricken. He also reminded the court that appellant had stated on the record that he thought Turner was incompetent and incapable of representing him. The following colloquy then took place:

> THE COURT: Do you have any doubts at all now about Mr. Turner's competency?
>
> THE DEFENDANT: Well, Your Honor, the damage is done. When he brought that other stuff—

THE COURT: Mr. Johnson, I think we will proceed with your representing yourself. The Court found that you knowingly and voluntarily waived the right to have a lawyer.

THE DEFENDANT: But I'm saying, Your Honor, I am not knowledgeable about jury proceedings.

THE COURT: You'll have to do the best you can. You have decided to proceed without a lawyer. Please return to the trial table. We will proceed with this case, and you will continue to represent yourself.

THE DEFENDANT: All right.

THE COURT: Mr. Turner, in accordance with our previous discussions, will you make yourself available—

MR. TURNER: Certainly, Your Honor.

THE COURT: —to the defendant, sitting on the first bench there?

MR. TURNER: Very well, Your Honor.

THE COURT: Mr. Johnson, as we have discussed previously, Mr. Turner is sitting in as an observer, and you are free to ask him any questions, if you want to.

THE DEFENDANT: Yes, Sir.

Following this exchange, jury selection was completed. Appellant participated fully. He provided the names and addresses of the witnesses he intended to call, kept track of the jurors who responded to certain questions, and questioned some of the jurors. He also made an opening statement to the jury.

■ Appellant now argues that the court's refusal to allow him to retract his waiver of counsel was an abuse of discretion. He acknowledges that an accused may not vacillate forever on the issue of whether he wants counsel, and that at some point a court is justified in insisting that the accused abide by his decision to represent himself. But in this case, appellant argues, he was clearly not trying to manipulate the system. Our review of the record leads us to conclude otherwise. Simply because the judge could have ordered Mr. Turner to re-enter his appearance immedi-

ately, does not make it an abuse of discretion for him not to have done so. Appellant's statements concerning Mr. Turner can best be characterized as mistrustful and contemptuous. He had, shortly before, declared that Mr. Turner was incompetent to defend him. Furthermore, after the court told appellant to continue his own defense, he proceeded in a rational, competent, coherent manner. It is interesting to note that none of appellant's outbursts took place in front of the jury—they were all reserved for the judge and for counsel. Under these circumstances we find no abuse of discretion in the trial judge's refusal to re-appoint Mr. Turner to represent appellant. *See, e.g., Glenn v. United States,* 303 F.2d 536, 540–41, *cert. denied sub. nom., Belvin v. United States,* 372 U.S. 922, 83 S.Ct. 737, 9 L.Ed.2d 726 (1963); *Commonwealth v. Jackson,* 396 Mass. 790, 383 N.E.2d 835, 839 (1978).

### III.

*The court's failure to appoint counsel for appellant during his voluntary absence from the trial*

On the second morning of the trial Mr. Turner sought permission from the court to have another assistant Public Defender appointed as stand-by counsel. Appellant made the following response:

At this point, I disqualify myself, and I feel as though I am not competent enough to proceed as my attorney. So I called my mother last night. She is going to get me an attorney, and so I am declining that.

I would like to say this, Your Honor, in reference to the latter charge, this is why I am in accordance with the Maryland Rules of Procedure, that I didn't have time enough to adequately prepare my case and my defense on the latter charge. It hit me as an element of surprise; so therefore I feel that the motion for postponement should be granted to preserve my right to obtain counsel.

The trial judge denied both the motion to disqualify appellant from representing himself and the motion for a post-

ponement. Appellant now argues that the denial of these motions was an abuse of discretion. We do not agree.

■■■ Since jeopardy had already attached, the motion for a postponement was, in effect, a request for a continuance. The granting of a continuance rests in the sound discretion of the trial court and will not be disturbed on appeal unless the failure to grant a continuance is prejudicial to the defendant. *Jackson v. State,* 288 Md. 191, 416 A.2d 278 (1980); *Mitchell v. State,* 56 Md.App. 162, 467 A.2d 522 (1983).

■■■ The facts of a particular case determine whether the denial of a continuance to obtain counsel is a violation of due process. *Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964). A defendant's freedom to choose his own counsel may not be used to subvert the orderly procedure of the courts or the fair administration of justice. *United States v. Casey,* 480 F.2d 151, 152 (5th Cir.1973), *cert. denied,* 414 U.S. 1045, 94 S.Ct. 550, 38 L.Ed.2d 336. Last minute substitutions of counsel which require a continuance are particularly disfavored once the trial has begun and jeopardy has attached. *See, e.g., Pickens v. State,* 96 Wis.2d 549, 292 N.W.2d 601 (1980) (trial court did not err in refusing to honor defendant's attempted waiver of counsel on second day of rape trial); *German v. State,* 268 Ind. 67, 373 N.E.2d 880 (1978) (no error in refusing to allow retraction of waiver of counsel on first morning of trial, after jury was empaneled).

We were faced with a similar situation in *Mitchell v. State, supra.* In *Mitchell,* after the prosecutor's opening statement, the defendant asked that his attorney be discharged and the Public Defender be appointed to represent him. After finding the defendant's reasons for wanting to discharge his attorney to be non-meritorious, the trial court gave him the option of continuing with his original attorneys or proceeding *pro se.* After a full waiver inquiry, the defendant elected to represent himself, and then argued on appeal that his decision to do so was coerced. In rejecting

that argument this court stated: "We recognize that every defendant's Sixth Amendment right to counsel must remain inviolate. At the same time, we cannot allow the judicial system to brought to a grinding halt by a perversion of those rights through eleventh hour attempts to abort criminal trials." 56 Md.App. at 177, 467 A.2d 522.

■■■ We believe that the case *sub judice* involves just such an attempt. The case had been postponed six times and ended in a mistrial once. Appellant had a history of firing attorneys. His response to unfavorable rulings was a consistent refrain of "My lawyer is no good; I want a postponement." Appellant's claim that the charge of unlawful possession of a handgun by one previously convicted of a crime of violence came as a complete surprise to him is patently absurd. The trial judge was not confronted with a defendant who was incompetent to stand trial. He was confronted with a defendant who was unwilling to stand trial. We believe that he responded appropriately when he denied the motion for a continuance to obtain substitute counsel.

Shortly after the judge denied his motion for a continuance to obtain substitute counsel, appellant insisted on leaving the courtroom. He said repeatedly that he was not going to participate in the trial and stood up to walk out.[3]

---

**3.** The transcript reads:

THE DEFENDANT: But Your Honor, I don't have any defense. I don't have any defense. I am declining.

THE COURT: Well, you will defend yourself as best you can. You have elected to defend yourself, and the Court will give you very wide latitude.

Before the jury comes in, I do want to caution you about one thing. There is a history to this case, which you know and I know, and which we can't close our eyes to.

THE DEFENDANT: But Your Honor, those delays were not my fault.

THE COURT: Listen to me for a second, Mr. Johnson.

For whatever reason, certain events happened before, and as a result of those events, you were removed forcibly from the courtroom, and I hope that that does not happen again, and while the Court will give you very wide leeway in what you want to say, motions you want

to make, whatever you want to say to the Court, you will be granted no leeway as far as objectionable behavior is concerned.

Do you understand that?

THE DEFENDANT: I said I'm declining.

THE COURT: Fine.

And I want the sheriff to be adequately prepared to take whatever steps are necessary very, very quickly in the event that any such steps become necessary.

Now, Mr. Johnson, is there anything else you would like to say before we bring the jury in?

THE DEFENDANT: I just told you, Your Honor, I'm declining. I am not going to proceed. I am declining.

THE COURT: You are not going to proceed. Very well, You may defend yourself in any way you see fit, and I suppose that includes silence on your part.

THE DEFENDANT: Your Honor, that is not a defense. I am just not participating.

THE COURT: You are getting up as though you want to leave the courtroom. You have the right to leave the courtroom if that is what you want to do.

THE DEFENDANT: I would rather leave the courtroom.

THE COURT: You want to leave the courtroom, Mr. Johnson?

THE DEFENDANT: Yes, sir, I do.

THE COURT: Sit down for one minute.

Mr. Levenson, you are shaking your head.

Do you have any objection?

MR. LEVENSON: I think he should be required to stay here. If he wants to present a defense, fine, as long as he doesn't act up.

THE COURT: Against his will?

MR. LEVENSON: I think, it seems to me, you are in a difficult situation. He doesn't have a lawyer, and he wants to leave.

THE COURT: Mr. Levenson, I think that the Court cannot force Mr. Johnson to have a lawyer, and I think the Court cannot force Mr. Johnson to leave or stay.

Mr. Johnson appears to the Court to be acting in a perfectly rational way. He appears to know full-well the nature of these proceedings. He has discussed motions with the Court. He has given the Court reasons. He has expressed a desire that he wants to leave the courtroom. He does not have to be present during the trial, I think, if he wants to leave.

Is that your request, that you leave the trial, Mr. Johnson?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Very well, Permission is granted, and the sheriff will now excise [sic] Mr. Johnson from the courtroom. Thank you sir.

If you change your mind, let the sheriff know and you can come back whenever you want.

MR. TURNER: For the record, Your Honor, may I be excused?

THE COURT: Not yet.

MR. LEVENSON: Do you want to qualify him, Judge, to make sure it's voluntary?

THE COURT: Mr. Johnson, it is perfectly clear to the Court what you are doing is voluntary; isn't that correct?

The judge, after questioning him to determine whether he was "knowingly and intelligently" waiving his right to be present, was of the opinion that he could not force appellant to stay in the courtroom. He granted permission for appellant to leave, but insisted that stand-by counsel remain to assist and advise the court regarding appellant's defense.

Appellant now argues that the trial court's acceptance of his waiver of his right to counsel, his assertion of his right to self-representation, and his waiver of his right to be present at trial, denied him a fair trial. He characterizes the trial court's attitude as "entirely too cavalier." We do not see it that way. The record reflects a series of remarkably patient and careful attempts to accomodate appellant, which began long before his second trial. Now, on appeal, his attorneys argue essentially that he had no right to make these independent, voluntary decisions because they were foolish. We know of no law that requires that a defendant be wise in order to stand trial; he is only required to be competent. We know of no law that requires a defendant be wise in order to waive important rights; it is only required that he understand the possible consequences. Appellant met both of these standards.

We think appellant's situation is not unlike those where the *pro se* defendant simply chooses to remain silent, and in that manner refuses to participate at all. *See, e.g., Bishop v. State,* 95 Nev. 511, 597 P.2d 273 (1979); *People v. Teron,* 23 Cal.3d 103, 151 Cal.Rptr. 633, 588 P.2d 773 (1979). Nor is it very different from a situation where a *pro se* defendant declines to plead guilty, but actively works to bring about his own conviction by systematically bringing out

---

THE DEFENDANT: Like I said, I am not qualified. I am incompetent.

THE COURT: But no one is forcing you to leave?

THE DEFENDANT: I prefer to leave to obtain counsel.

THE COURT: It is voluntary. You have made that obvious three times. I don't want to cause you unnecessary grief. If you want to leave, you may do so. You can come back whenever you want.

THE DEFENDANT: I'm not coming back.

unfavorable evidence. *See, e.g., Goode v. Wainwright,* 704 F.2d 593 (11th Cir.1983), *rev'd on other grounds,* 464 U.S. 78, 104 S.Ct. 378, 78 L.Ed.2d 187, *reh. denied,* 465 U.S. 1014, 104 S.Ct. 1017, 79 L.Ed.2d 247. In none of these situations have the courts imposed a duty on the defendant to defend himself.

■ The trial court appointed stand-by counsel and insisted he remain throughout the trial. Appellant argues that the court should have gone further and created an attorney-client relationship by appointing counsel to be appellant's attorney during his absence. While we might have been more comfortable if the trial judge had appointed an attorney to represent appellant, any attorney-client relationship created under those circumstances would have been a sham. Appellant made it clear that he was not going to participate in the trial unless the court acted favorably on his motions. Under those circumstances, it would have been an empty gesture for the court to have appointed an attorney to act as counsel for the appellant.

It is clear from the record that appellant was competent to assist in his defense. He was simply unwilling to do so. It is also clear from the record that appellant knew exactly what he was doing when he chose to waive counsel, elected to represent himself and then elected to leave the courtroom. And, as we have already observed, this case had already been postponed six times and ended in a mistrial once.

Under these circumstances, we find that the trial judge did not abuse his discretion when he declined to appoint counsel for appellant during his voluntary absence from the courtroom and chose instead to rely on stand-by counsel. *C.f., State v. Wiggins,* 158 N.J.Super. 27, 385 A.2d 318 (1978).

## IV.

### *The motion to suppress evidence*

■ Prior to trial, appellant moved to suppress a handgun found on his person during his arrest. Because the

motion had been previously denied by Judge Wahl, Judge Steinberg would not rehear it. Appellant contends that this was reversible error. He argues that Judge Wahl's grant of a mistrial during his first trial on the charges nullified all proceedings, including her denial of the motion to suppress. In *Logue v. State*, 282 Md. 625, 386 A.2d 780 (1978), the Court of Appeals rejected a similar argument. In that case, prior to trial, the defendant moved to suppress evidence seized as a result of a warrantless search. The motion was denied, and following a jury trial, the defendant was convicted. He moved for a new trial which was granted. At his retrial he argued that he was entitled, as a matter of right, to a rehearing on his motion to suppress. In rejecting that contention, the Court differentiated between the various phases of prosecution from arrest to sentence:

The fallacy in his argument is that he perceives all phases of his prosecution from arrest to sentence as part of his trial. With this proposition we disagree. The trial of an accused is that phase of the proceeding where evidence is submitted to the fact finder in open court to determine the guilt or innocence of a defendant; a new trial or trial *de novo* is granted the defendant to afford him an opportunity to re-examine an issue of fact with a view to correcting errors which have occurred in the course of the preceding trial. It is the function of the trial judge to determine what evidence shall be considered by the jury and in doing so he makes this determination outside the presence of the jury. Thus a motion attacking the charging document, a motion to suppress identification testimony, a motion to suppress evidence unlawfully seized are all matters conducted by the trial judge outside the presence of the jury for the protection of the defendant to assure him a fair trial. When such motion has been fully heard and considered and there is no new evidence which was unavailable at the first hearing, the trial judge may exercise his discretion and bind himself by the prior ruling whether the proceeding is the original trial or a new trial.

*Id.* at 628, 386 A.2d 780. *See* Rule 4–252(g)(2). We view this language as dispositive. Appellant does not argue that he had any new evidence to present to Judge Steinberg which was unavailable at the suppression hearing before Judge Wahl. We hold that, under these circumstances, Judge Steinberg did not abuse his discretion by declining to rehear the suppression motion.

## V.

### *The claim of an improper "Allen charge"*

Appellant next contends that the trial court erred in giving an improper *"Allen* charge" [4] to the jury. At the trial, before the jury retired and within the context of lengthy and thorough jury instructions, the court stated the following:

> When you do reach a verdict, that verdict must be unanimous. All twelve of you must agree. There are many cases in which absolute certainty cannot be expected, and although the verdict must be the verdict of each individual juror, as a result of his or her own convictions and not merely acquiescence to the conclusions of what other people say. Each of you should examine the question submitted with candor and with a proper regard and deference to the opinions of your fellow jurors. In other words, you should listen to each other and not just give up, throw in the sponge, to get a verdict. You should listen and keep an open mind.

> It is your duty to decide this case, if you can, conscientiously do so, and you should listen with a disposition to being convinced to each other's arguments. Simply keep an open mind and listen to each other. If your views are contrary to those of the vast majority, you should consider whether your views, which make no impression on the minds of others, are correct, or consider whether it's the other way around. You must conscientiously come to a

---

4. *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed.2d 528 (1896).

decision. You should attempt to influence each other and be influenced by each other and keep an open mind.

 As this instruction was not objected to, it has not been preserved for our review. Rule 1085. Appellant argues that he can hardly be faulted for failing to object to this instruction since it was given when he was "unrepresented." He is wrong. As we have already observed, his decision to represent himself was knowing and voluntary and he chose not to put on a defense. Nor do we view this instruction as that type of plain error which we may, on our own motion, take cognizance of and correct. *See Vernon v. State,* 12 Md.App. 157, 163, 277 A.2d 635 (1971); Rule 4-325(e). Appellant contends that the instruction given by the court was akin to the traditional *"Allen* charge", which the Court of Appeals has held to be improper in this State. *See Burnette v. State,* 280 Md. 88, 371 A.2d 663 (1977); *Goodmuth v. State,* 302 Md. 613, 490 A.2d 682 (1985). Our reading of the instruction given convinces us that it sufficiently communicated the substance of the instruction recommended by the American Bar Association and approved by the Court of Appeals in *Burnette v. State, supra.* Thus, the instruction, if erroneous at all, was not plainly so.

## VI.

### The sentence

 Finally, appellant asserts that the trial court erred in imposing double punishment for one offense. He says that this is so because identical conduct on his part led to both of his convictions. Therefore, he argues, the two offenses should have been treated as one for purposes of sentencing. This argument is essentially a rewording of the "actual evidence" test for determining whether two offenses merge for purposes of sentencing—*i.e.,* whether the evidence actually produced at trial as to both offenses is substantially the same. This test has been specifically rejected in favor of the "required evidence" test. *See Harris v. United States,* 359 U.S. 19, 23, 79 S.Ct. 560, 564, 3

L.Ed.2d 597 (1959); *United States v. Kramer*, 289 F.2d 909
(2d Cir.1961); *Thomas v. State*, 277 Md. 257, 353 A.2d 240
(1975). Thus, the test to be used for determining whether
two offenses are the same for double jeopardy purposes is
whether each offense requires proof of a fact that the other
does not. *Brooks v. State*, 284 Md. 416, 397 A.2d 596
(1979).

 In order to secure a conviction for a violation of
Md.Code Ann., Art. 27, § 36B(b), the State must prove that
the defendant (1) unlawfully, (2) wore, carried or transport-
ed, (3) on or about his person (4) a handgun. A violation of
Art. 27, § 445(c) requires proof of (1) simple possession, (2)
of a pistol or revolver, (3) by a person who has previously
been convicted of a crime of violence. Thus, the identical
conduct—having a gun—could constitute one, both, or nei-
ther of these offenses.

 Article 27, § 36B was originally enacted by Ch.
13, Acts of 1972. The Act, according to the declaration of
policy enacted with it, is intended to reduce the alarming
increase in violent crimes involving handguns by getting
handguns off the streets, without regard to any previously
demonstrated propensity for violence on the part of the
handgun owner. Art. 27, § 445(c), on the other hand, is a
much older statute. It is derived from former Md.Code
Ann., Art. 27, § 531D (1939, 1947 cum supp.) and was
originally enacted by Ch. 622, Acts of 1941. It is intended
to prevent those who have already demonstrated a propensi-
ty for violence, as evidenced by a conviction of a crime of
violence, from possessing handguns. Although each stat-
ute stems from a general intention to reduce violent crimes,
this general intention does not cause the offenses to
merge.[5] The trial judge did not commit error when he
sentenced appellant.

---

5. Even where two statutes proscribe the "same" conduct, cumulative
 punishments may be imposed after a single trial where a legislature
 specifically authorizes cumulative punishments. *Missouri v. Hunter,*
 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535; *Whack v. State,* 288 Md.

JUDGMENTS AFFIRMED.
COSTS TO BE PAID BY APPELLANT.

137, 416 A.2d 265 (1980), *appeal dismissed,* 450 U.S. 990, 101 S.Ct. 1688, 68 L.Ed.2d 189 (1981).