You have asked for our opinion on two questions concerning application of the statute that prohibits an individual from possessing or receiving certain classes of firearms if that individual has been convicted of a "disqualifying crime." That statute defines "disqualifying crime" to include, among other offenses, a "violation classified as a misdemeanor in the State that carries a statutory penalty of more than two years." Specifically, you ask:
1. Does the Maryland statute apply only to misdemeanor convictions under Maryland law or does it also encompass convictions in other states that would be classified in Maryland as misdemeanors that carry a penalty in excess of two years?
2. For purposes of determining whether a particular conviction falls within the definition of "disqualifying crime," should one look to the maximum penalty associated with the offense at the time of conviction or to the penalty associated with the offense at the time of the firearms transaction?
In our opinion, the answers to your questions are as follows:
1. The phrase "disqualifying crime" includes out-of-State offenses, as well as those committed in Maryland. An offense in another state that would be classified as a misdemeanor in Maryland with a potential penalty under Maryland law in excess of two years imprisonment falls within that definition. Thus, an individual who has been convicted of such an offense may not possess a regulated firearm in Maryland.
2. Because the firearms law regulates the current possession or reception of a firearm, the determination as to whether a particular misdemeanor "carries" a penalty in excess of two years should be made with reference to the penalty at the time of possession, if it is different from the potential penalty at the time of conviction.
 I Statutory Provision
The State's regulated firearms law governs the possession, sale, and transfer of handguns and certain assault weapons. Annotated Code of Maryland, Public Safety Article ("PS"), § 5-101et seq. Under that law, an individual who has been convicted of a "disqualifying crime" may not possess a regulated firearm. PS § 51-33(b)(1). As a consequence of this prohibition, the statute sets forth related restrictions. Such an individual is ineligible for a firearms dealer's license. PS § 5-107(b)(4)(iii); § 5-114(b)(2)(i). Nor may that individual purchase, rent, or otherwise receive a regulated firearm. PS §§ 5-118(b)(3)(ii),5-134(b)(2).
The statute defines "disqualifying crime" as follows:
 "Disqualifying crime" means:
 (1) a crime of violence;
 (2) a violation classified as a felony in the State; or
 (3) a violation classified as a misdemeanor in the State that carries a statutory penalty of more than 2 years.
PS § 5-101(g).[1] Your questions are directed to the third category of offense — crimes that are classified as misdemeanors and that carry a maximum penalty of more than two years incarceration.
 II Analysis
A. Out-of-State Crimes
As indicated above, the statute defines "disqualifying crime" to include "a violation classified as a misdemeanor in the State that carries a statutory penalty of more than two years." You ask whether this provision encompasses out-of-State misdemeanor convictions that would carry a maximum penalty of at least two years if committed in Maryland.
1. Alternative Interpretations of Maryland Statute
The literal language of the statute is not dispositive of your question as there are potentially several ways to interpret it. First, it could be construed to describe only Maryland convictions. In that case, the answer to your question would be simple: an out-of-State conviction would never be a disqualifying crime under this provision.
Second, the phrase could be construed to include out-of-State convictions — specifically, certain convictions for offenses that would be "classified as a misdemeanor in the State" if committed in Maryland. However, there remains some ambiguity as to the universe of such offenses that are disqualifying crimes under this interpretation. On the one hand, the language could encompass only those out-of-State offenses that would be classified as misdemeanors in Maryland and that carry a penalty in excess of two years under the law of the state of conviction. Under that view, the benchmark is the potential penalty in the other state. Cf., e.g., State v. Langlands, 583 S.E.2d 18,19-22 (Ga.S.Ct. 2003) (construing Georgia felon-in-possession statute not to encompass Pennsylvania manslaughter conviction classified as a misdemeanor in Pennsylvania). Alternatively, it could include any out-of-State offense that would be classified as a misdemeanor if committed in Maryland and that would carry a maximum sentence in excess of two years if committed in Maryland, regardless of the sentence that the other state has designat for the offense. Cf., e.g., State v. Pollard, 44 P.3d 1261
(Kan.S.Ct. 2002) (construing Kansas felon-in-possession law to be triggered by a Missouri disposition involving probation before imposition of sentence, even though such a disposition is not considered a conviction under Missouri law).
To resolve these interpretive issues, it is helpful to review the legislative history of PS § 5-101(g)(3) and, for reasons that shall become apparent, an analogous federal law.
2. Federal Firearms Disqualification
The federal firearms law restricts the possession of firearms or ammunition[2] by individuals who fall into a number of disqualifying categories. 18 U.S.C. § 922(g).[3] Pertinent to our discussion, it includes in the category of disqualified persons any one "who has been convicted in any court of, [sic] a crime punishable by imprisonment for a term exceeding one year."18 U.S.C. § 922(g)(1).
While the federal restriction concerning individuals with prior convictions may seem straightforward at first glance, the statute elaborates on its meaning with respect to state offenses in a way that is not entirely intuitive. Under 18 U.S.C. § 921(a)(20), the phrase "crime punishable by imprisonment for a term exceeding one year" does not include, among other things, "any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less."18 U.S.C. § 921(a)(20)(B).[4] Thus, the federal statute excludes from the definition of "crime punishable by imprisonment for a term exceeding one year" state misdemeanor offenses for which the maximum penalty is up to two years imprisonment. The limitation of disqualifying misdemeanors by reference to a potential sentence in excess of two years became part of the federal statute in an early amendment during the year that the federal law first went into effect. See Pub.L. No. 90-618, Title I, § 102, 82 Stat. 1213 (1968).
Thus, as a general rule, an individual who has been convicted of a state misdemeanor is disqualified under federal law from possessing a firearm if the offense carries a sentence in excess of two years imprisonment. The federal statute looks to the penalty in the state of conviction as the benchmark.[5] In determining whether a misdemeanor falls within this category, the critical inquiry is the potential sentence under state law, not the actual sentence imposed in a particular case. SeeUnited States v. Coleman, 158 F.3d 199, 203-4 (4th Cir. 1998) (en banc) (conviction for common law assault under Maryland law fell within category as potential punishment was limited only by Cruel and Unusual Punishment clauses of federal and State constitutions).
The Maryland General Assembly looked to this part of the federal statute when it added a similar misdemeanor disqualification to the Maryland firearms law, as a brief excursion into its legislative history demonstrates.
 3. Legislative History of Misdemeanor Disqualification in Maryland
The precursor of PS § 5-133 was enacted in 1941. Chapter 622, Laws of Maryland 1941, then codified at Article 27, § 531D. That law made it illegal to sell or otherwise transfer a handgun to a person who "has been convicted of a crime of violence . . ."Id. It was "intended to prevent those who have already demonstrated a propensity for violence, as evidenced by a conviction of a crime of violence, from possessing handguns."Johnson v. State, 67 Md. App. 347, 378, 507 A.2d 1134, cert.denied, 307 Md. 260, cert. denied, 479 U.S. 993 (1986). The statute defined "crime of violence" by listing various crimes, without explicitly indicating any limits on the jurisdiction of conviction. The statute also disqualified a "fugitive from justice" from possessing a handgun. It defined "fugitive from justice" to include anyone "who has fled from any State, Territory, or the District of Columbia, or possession of the United States, to avoid prosecution for a crime of violence . . ." This indicates that "crime of violence" was not a phrase confined to Maryland offenses.
In 1966, the firearms law was substantially revised. Chapter 502, Laws of Maryland 1966. Under those amendments, an individual could not purchase a handgun from a firearms dealer unless the purchaser could truthfully attest that he or she had not been convicted "in this State or elsewhere" of a crime of violence or certain firearms crimes. Annotated Code of Maryland, Article 27, § 442(e)(2)(i) (1967 Repl. Vol.). Similarly, in order to obtain a license to deal in firearms, an individual was required to state under penalties of perjury that he or she had not been convicted of the same categories of crimes "in this State or elsewhere."Id., § 443(d)(4)(iii). The statute also made clear that conviction of such a crime "in this State or elsewhere" would result in revocation of the dealer's license. Id.,
§ 443(h)(2).[6]
Over the next three decades, the Legislature amended the statute in other respects, but retained the references to disqualifying convictions "in this State or elsewhere," as well as definitional language that referenced prosecutions for "crime of violence" in other jurisdictions. See Annotated Code of Maryland, Article 27, §§ 441(f), 442(f)(2)(i), 443(d)(4)(iii), and 443(h)(2) (1992 Repl.Vol. 1995 Cum. Supp.). It was thus clear that the disqualification based on a prior conviction for a crime of violence encompassed convictions in other states. This was consistent with the original purpose of the firearms law — to keep regulated firearms out of the hands of those with an established propensity for serious lawbreaking.
In 1996, the statute was amended to apply to assault rifles, as well as handguns, which were collectively defined as "regulated firearms." Chapter 561, § 2; Chapter 562, § 2, Laws of Maryland 1996. The law was also revised in other respects. Notably, the range of disqualifying crimes was expanded to include misdemeanor offenses. The 1996 amendments were largely based on the recommendations of the Governor's Commission on Gun Violence ("Commission"). Among other things, the Commission recommended that Maryland law "incorporate federal law `reasons to deny a handgun' into State law." Governor's Commission on Gun Violence, Comprehensive Reform for a Safer Maryland (November 1, 1995), Recommendation No. 17, p. 20. The Commission explained this recommendation:
 Under federal law, if a person is convicted of any misdemeanor that carries more than a two year term of imprisonment, they are prohibited from owning a firearm. There are approximately 90 misdemeanors in the State of Maryland that trigger this prohibition. Once an individual is convicted of such a misdemeanor, under federal law, she or he may no longer purchase or possess a firearm.
Id. In the same vein, an explanatory memo in the legislative file states that the addition of the reference to misdemeanors in what is now part of the definition of "disqualifying crime" was designed to parallel 18 U.S.C. § 921(a)(20). Legislative files for Senate Bill 215, House Bill 297 (1996).[7]
Consistent with the recommendations of the Commission, the General Assembly in 1996 sought to restrict further the categories of convicted individuals who could lawfully possess a regulated firearms. See Fiscal Note for House Bill 297 (April 3, 1996) (This Administration bill . . . expands exclusions on who may buy or possess regulated firearms . . ."). However, in the course of revising the firearms law to incorporate the misdemeanor disqualification from the federal statute, restate the existing disqualifications, and add to the categories of disqualifying convictns, the Legislature did not include the qualifying phrase "in this State or elsewhere" that had appeared in the prior version of the statute. Conceivably, the absence of that phrase could signal a legislative intent that no out-of-state conviction — whether for a "crime of violence", a felony, or a misdemeanor — would any longer be a disqualifying conviction under the Maryland firearms law. However, such an interpretation would be completely at odds with the recommendations of the Commission and the stated purposes of the 1996 amendments. Nothing in the legislative file indicates any intention of cutting back on the universe of crimes that would result in a disqualification. See Floor Report for Senate Bill 215 (1996) ("This bill is aimed at reducing gun-related violent crime in Maryland [by] . . . changes to the current law governing the sale, transfer, and possession of [firearms]"). An interpretation of the statute that completely eliminated out-of-State convictions as disqualifying crimes would be contrary to the "the strong desire to keep firearms away from felons and potentially violent persons" that underlay this law.See Melton v. State, 379 Md. 471, 484, 842 A.2d 743 (2004).
In a 2002 amendment, the Legislature directed that the State Police undertake a criminal history records check in connection with applications for firearms dealer licenses and individual handgun permits, specifying a "State and national criminal history records check." Chapter 418, Laws of Maryland 2002, nowcodified at PS §§ 5-108(b), 5-305(b) (emphasis added).[8]
The specification of a national criminal records check also confirms that the Legislature contemplated that out-of-State convictions would remain within the universe of disqualifying crimes.
4. Summary
With respect to the first interpretive issue — whether the phrase "a violation classified as a misdemeanor in the State" denotes only Maryland misdemeanor convictions or covers equivalent out-of-State offenses as well — the legislative history of PS § 5-133 demonstrates that the disqualification based on prior convictions was intended to include out-of-State convictions. If the statute were interpreted otherwise, an individual who had been convicted of multiple serious offenses in another state and who came to Maryland might face no impediment under Maryland law to acquiring a handgun while a lifetime resident with a single local conviction would be subject to the disqualification. This would be an anomalous result for a statute intended to keep firearms out of the hands of individuals present in Maryland who have shown a propensity for serious lawbreaking.
Having determined that the definition of "disqualifying crime" was meant to include out-of-State offenses, we must address the second interpretive issue: whether one looks to the potential penalty in the state of conviction or the potential penalty for the equivalent Maryland offense to determine whether the two-year threshold for misdemeanor offenses is satisfied.
In our view, the more reasonable approach is to look to the potential penalty for the equivalent offense in Maryland for at least two reasons.[9] First, in order to apply the definition of "disqualifying crime" in PS § 5-101(g) to an out-of-State conviction, one has to determine the equivalent Maryland offense. It appears consistent to use the penalty associated with that Maryland-equivalent offense to apply what is, after all, one phrase: "a violation classified as a misdemeanor in the State that carries a statutory penalty of more than 2 years."
Second, such a construction better reflects the policy judgments the Maryland General Assembly has made in setting penalties for various types of offenses and linking the firearms disqualifications to those penalties. When it defined "disqualifying crime" in PS § 5-101(g), the General Assembly made a judgment as to those offenses that indicate that an individual has such a propensity for lawbreaking that he or she should be barred from possessing a regulated firearm in Maryland. In expressing that judgment, the Legislature used as one reference point the various potential penalties that it has assigned to misdemeanor offenses. That same reference point should be used to assess whether an equivalent out-of-State offense results in a firearms disqualification in Maryland. It seems unlikely that, in defining the universe of disqualifying offenses, the General Assembly meant essentially to defer to the judgment of other states as to whether or not an individual should be able to possess a firearm in Maryland. Cf. State v. Menard, 888 A.2d 57
(R.I.S.Ct. 2005) (whether Arizona conviction is "crime of violence" for purposes of Rhode Island firearms law to be determined by whether similar crime in Rhode Island would fit Rhode Island definition of "crime of violence").
B. Relevant Penalty
You have also raised a question based on the possibility that legislatures, on occasion, change the maximum penalty for offenses. For example, suppose John Doe was convicted five years ago of a misdemeanor offense for which the maximum penalty at the time was less than two years incarceration. Assuming that the particular offense was not a "crime of violence" and that no other disqualification applied, Mr. Doe would not have been disqualified from possessing a regulated firearm in Maryland at that time. Suppose that the Legislature has since revised the penalty for that particular offense and it now carries a maximum penalty in excess of two years. Is Mr. Doe now disqualified from possessing a firearm in Maryland? In other words, in determining whether a particular conviction is a "disqualifying crime" under Maryland law, does one look to the maximum penalty associated with the offense at the time of conviction or at the time of possession of the firearm?
The text of the statute suggests that one looks to the penalty at the time of possession of the firearm. The firearms law has always defined the misdemeanor disqualification in the present tense: "a violation classified as a misdemeanor in the State thatcarries a statutory penalty of more than 2 years." PS § 5-101(g)(3) (emphasis added). Our review of the legislative history of the 1996 amendment that added the misdemeanor disqualification did not reveal anything that contradicts the apparent meaning of the text in this regard. (By contrast, if the disqualification had been defined in terms of a violation that "carried" a certain penalty, the text would have incated that the penalty at the time of conviction governed application of the disqualification).
Under this interpretation, an individual like Mr. Doe, who was lawfully in possession of a regulated firearm, would be disqualified from continuing to possess that firearm after the Legislature increased the potential penalty for the offense for which he had been convicted. Is this result forbidden by the constitutional prohibitions against "ex post facto" laws?
An individual who is convicted of a criminal offense faces whatever maximum penalty applied to that offense at the time he or she committed the offense. If the Legislature subsequently decides to enhance the maximum penalty for the violation, the new penalty would not apply to the individual by virtue of the Ex Post Facto clauses of the federal and State constitutions.United States Constitution, Article I, § 10; Maryland Declaration of Rights, Article 17. While a disqualification under the regulated firearms law can be a collateral consequence of a criminal conviction, it is not part of the sentence. Rather, the regulated firearms law regulates the current possession and transfer of certain types of firearms. The Ex Post Facto Clause does not prevent a legislature from making a conviction that was once not a disqualification into one that is. See, e.g., Lehman v.Pennsylvania State Police, 839 A.2d 265, 269-74 (Pa.S.Ct. 2003);United States v. Brady, 26 F.3d 282, 291 (2d Cir. 1994).
In essence, such an action is no different than if the Legislature chose to add a new category of offenses to the list of disqualifying crimes — as it did when it added misdemeanors to the class of disqualifying crimes — or otherwise to expand the categories of disqualifications. See also 85 Opinions of theAttorney General 259 (2000) (Legislature's amendment of regulated firearms law resulted in prior convictions for common law assault to be included in the definition of "crime of violence"). Any such change in the law could convert a lawful possession into unlawful possession, unless the Legislature specified otherwise. Whether a law should include such a clause is itself a policy decision that is the prerogative of the Legislature. However, if the Legislature chose not to include a grandfather clause, it would not violate the Ex Post Facto Clauses. See, e.g., United States v. Mitchell, 209 F.3d 319,322-23 (4th Cir.), cert. denied, 531 U.S. 849 (2000) (disqualification in federal firearms law related to domestic violence conviction could be applied to defendant without violating Ex Post Facto clause, even though defendant's conviction and original receipt of firearm both preceded addition of that disqualification to the law).
 III Conclusion
For the reasons set forth above, it is our opinion that:
1. The phrase "disqualifying crime" includes out-of-State offenses, as well as those committed in Maryland. An offense in another state that would be classified as a misdemeanor in Maryland with a potential penalty under Maryland law in excess of two years imprisonment falls within that definition. Thus, an individual who has been convicted of such an offense may not possess a regulated firearm in Maryland.
2. Because the firearms law regulates the current possession or reception of a firearm, the determination as to whether a particular misdemeanor "carries" a penalty in excess of two years should be made with reference to the penalty at the time of possession, if it is different from the potential penalty at the time of conviction.
 J. Joseph Curran, Jr. Attorney General
 Robert N. McDonald Chief Counsel Opinions and Advice
[1] The statute defines "crime of violence" as follows:
 "Crime of violence" means:
 (1) abduction;
 (2) arson in the first degree;
 (3) assault in the first or second degree;
 (4) bulary in the first, second, or third degree;
 (5) carjacking and armed carjacking;
 (6) escape in the first degree;
 (7) kidnapping;
 (8) voluntary manslaughter;
 (9) maiming as previously proscribed under former Article 27, § 386 of the Code;
 (10) mayhem as previously proscribed under former Article 27, § 384 of the Code;
 (11) murder in the first or second degree;
 (12) rape in the first or second degree;
 (13) robbery;
 (14) robbery with a dangerous weapon;
 (15) sexual offense in the first, second, or third degree;
 (16) an attempt to commit any of the crimes listed in items (1) through (15) of this subsection; or
 (17) assault with intent to commit any of the crimes listed in items (1) through (15) of this subsection or a crime punishable by imprisonment for more than 1 year.
PS § 5-101(c).
[2] The statute defines "firearm" broadly to include "any weapon . . . designed to . . . expel a projectile by the action of an explosive" and "any destructive device", among other things. 18 U.S.C. § 921(a)(3). The statute also includes a definition of "ammunition." 18 U.S.C. § 921(a)(17).
[3] This subsection prohibits anyone subject to an enumerated disqualification from shipping, transporting, possessing, or receiving a firearm or ammunition in or affecting interstate or foreign commerce. See generally Jackson, Federal FirearmsProsecutions: A Primer, 33 U.Balt.L.F. 2 (2002).
[4] The statute also excludes "any Federal or State offense pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices." 18 U.S.C. § 921(a)(20)(A).
[5] Similarly, under a 1986 amendment of the federal statute, "[w]hat constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held." 18 U.S.C. § 921(a)(20); seealso United States v. Pennon, 816 F.2d 527, 528-29 (10th
Cir. 1987) (discussing 1986 addition of "choice of law" provision to federal statute).
[6] Oddly, the General Assembly did not add the phrase "in this State or elsewhere" to the original disqualification provision, which had been recodified in Annotated Code of Maryland, Article 27, § 445 (1967 Repl. Vol.). However, as noted above, another portion of the original statute made clear that the phrase "crime of violence" was not limited to Maryland offenses.
[7] Although it is apparent that the 1996 amendment of the Maryland statute was intended to incorporate the substance of an analogous federal statute, this does not necessarily mean that other similar terms that appear in both the State and federal firearms laws are necessarily co-terminous. Compare18 U.S.C. § 924(c)(3) (defining "crime of violence" for purposes of federal firearms law by reference to elements and nature of offense)with PS § 5-101(c) (defining "crime of violence" for purposes of Maryland firearms law by listing specific offenses).
[8] The statute concerning the investigation of applicants to purchase a firearm uses more general language concerning the investigation that does not specifically advert to the criminal history check. PS § 5-121 ("the Secretary shall conduct an investigation promptly to determine the truth or falsity of the information supplied . . .").
[9] The federal firearms law, of course, uses the penalty in the state of conviction as the reference point. However, federal criminal law generally defines national or interstate offenses and in many instances has no clear equivalent to local crimes common to every state. Cf. Small v. United States,125 S. Ct. 1752, 1756 (2005) (noting difficulty of equating a foreign conviction to American offenses in holding that a foreign conviction was not a disqualifier under the federal firearms law). For example, in defining crimes on land under federal jurisdiction, the Assimilative Crimes Act, 18 U.S.C. § 13, simply incorporates by reference the criminal law of the state in which the federal land is located. Thus, the use of the penalty in the state of conviction for the federal firearms disqualification is, in some respects, a matter of necessity. *Page 81